JUAN DÍAZ ARBONA, Appellant, v. REGISTRAR OF PROPERTY OF RÍO PIEDRAS, Respondent.

No. 1292. Submitted March 4, 1953.—Decided March 20, 1953.

*J. López del Valle* for appellant. The Registrar appeared by brief.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The "Deed of Protocolization of the Partitional Account of the Estate Left at the Death of Emérito Díaz Soto" [1] was presented for registration and the Registrar of Property of Río Piedras entered at the bottom thereof the following note:

"This document is recorded, after examining the will, to wit, Deed No. 48, of April 23, 1947, before notary Eduardo H. F. Dottin, and all the other complementary documents in law, as to three urban properties marked with the numbers 17, 18 and 19 in the inventory of Properties of Emérito Díaz Soto, adjudicated as part payment to Juan Díaz Arbona, at the place indicated on the margin of the description of said properties, as to which properties only, recordation was sought. *There appear to be no other encumbrances on said three properties except those disclosed by the will of Emérito Díaz Soto in payment of hereditary debts according to the very document that was recorded.* Río Piedras, December 13, 1948." [2] (Italics ours.)

On August 27, 1952, the appellant appeared before said Registrar with a document to which he had attached a copy of the aforesaid deed; a certified copy of the order entered by the former District Court of San Juan approving the protocolization involved in the deed, showing that the fees of the attorney and of the Commissioner in Partition who did that work had been duly paid;[3] and a certificate proving that

---

[1] We shall hereinafter referred to it as the deed, inasmuch as it is the only public deed involved here.

[2] It appears from pages 41 and 42 of the deed that "except for the fees of Mr. E. H. F. Dottin, attorney at law, who took part in the performance of this work and who represented at all times the executorship, and the fees of Juan R. Molina, Executor and Commissioner in Partition, and the encumbrance created by the will in the amount of TWO THOUSAND DOLLARS ($2,000) belonging to Juan Rivera, all other debts have been paid."

[3] The order approving the partition shows that checks for $2,700 and $300 were made out in favor of Mr. Dottin and Mr. Molina, respectively.

the $2,000 mentioned in the will as a debt in favor of Juan Rivera had been likewise paid. The Registrar entered the following note in the document thus presented:

"The record of this document is suspended for the reason that the amount of one dollar and fifty cents in stamps was deposited in accordance with subdivision 4 of the Schedule of Fees of the Registries of Property, while I consider that, on the contrary, the amount of six dollars and fifty cents in internal revenue stamps must be deposited in accordance with subdivision 3 of said Schedule of Fees pursuant to the decision of the Supreme Court in *Carlo* v. *Registrar*, 40 P.R.R. 23. In lieu thereof a cautionary notice for 120 days is entered on the margin of entry of presentation No. 15 of Daybook No. 393, in accordance with Act No. 39 of April 23, 1928. Río Piedras, September 29, 1952."

An administrative appeal under the Act of March 1, 1902 (Sess. Laws, p. 289) was taken to this Court to review that note.

In the brief presented in support of his appeal, the appellant states that "when the said partition was performed, as approved by the court, the following, among others, were entered as liabilities of the estate: (1) two thousand and seven hundred dollars to pay the fees of E. H. F. Dottin, attorney at law and notary; (2) two thousand dollars that belonged to Juan Rivera and were in the possession of the decedent; and (3) three hundred dollars to pay the fees of the executor and commissioner in partition"; that on December 13, 1948, the Registrar of Property recorded the adjudications contained in the Deed of Protocolization and mentioned as a fact that the entries were made subject to the "encumbrances of the will of Emérito Díaz Soto in payment of debts" and that "the entire question under discussion is whether the *marginal note* to be entered in order to cancel the *mention* of liabilities or liquidated debts in the inheritance of Emérito Díaz Soto is subject to the payment of fees in the amount of six dollars and fifty cents ($6.50) in

accordance with subdivision No. 3 of the Schedule of Fees contained in § 22, as amended by Act No. 102 of May 12, 1943, as claimed by the Registrar, or whether it is subject to the payment of one dollar and fifty cents ($1.50) only as provided by subdivisions Nos. 1 and 4 of the Schedule of Fees of that same Act and subdivision (3) of § 31 of the Political Code, as amended by the Act of March 14, 1907 (Sess. Laws, pp. 330, 358), as we do claim."

Pursuant to § 22 of the Act of March 10, 1904 (Sess. Laws, p. 154), Revised Statutes of 1911, p. 415, as amended by Act No. 102 of May 12, 1943 (Sess. Laws, p. 282):

"The tariff of fees to be paid hereafter for the services of the registrars of property . . . . . shall be as follows:
". . . . . . . . .

### "Number 1

*"Entries of Presentation and Notes Thereon*

"For the entry of presentation, marginal note . . . whose record, entry or marginal note is requested, except cancellations, there shall be paid:

"(*a*) When the title refers to six estates or less, $0.50, and $0.50 additional for each six or fraction of six estates in excess of the first six.
". . . . . . . .

### "Number 3

"For all work of whatever kind which should be made at the instance of an interested party for the cancellation or clearing of mortgages, annuities (*censos*) or property rights, including the entry of presentation and marginal notes, the following fees shall be charged for each estate:

"(*a*) If the estate or right is valued at less than five-hundred dollars, $2.00
". . . . . . . .

"(*g*) From more than four thousand to five thousand dollars, 6.00
". . . . . . . .

"Number 4

"*Special Notes, Records and Entries*

"When, in consequence of the presentation, no record or entry should be. made and marginal notes are made, the fees for each one shall be fifty cents; for each one of the notes embodied in Section 16 of the Mortgage Law, fifty cents."

Indeed, the only question to be decided is whether in the case under consideration the applicable subdivisions are Nos. 1 and 4 of § 22, or merely subdivision No. 3.

 Since only the hereditary debts are mentioned, it is admitted that their cancellation in the Registry must be carried into effect by marginal notes. See *Carlo* v. *Registrar, supra; Del Moral* v. *Registrar of Property*, 20 P.R.R. 391; *Janer et al.* v. *The Registrar of Property*, 18 P.R.R. 7.

 In *Carlo* v. *Registrar, supra,* a public instrument was presented in the Registry for the purpose of having the Registrar cancel by means of marginal notes two mentions of mortgage, and the appellant paid two dollars in internal revenue stamps, 50¢ thereof for each of the marginal notes. The Registrar returned the document without recording it, because in his opinion $2 had to be paid for each marginal note of cancellation. It was the opinion of this Court that "the registrar is right, because schedule 'three' refers specially and expressly to cancellations of mortgages, *no matter the form* of the operation in the registry, whereas *schedule 'four' does not refer to marginal notes for the cancellation of mortgages, but to marginal notes in general.*" (Italics ours.)

Subdivisions 3 and 4 of § 22 of our Act are identical with Nos. 5 and 6 of the Schedule of Fees of the Spanish Mortgage Law. As stated by Morell, the text writer, in Vol. 5 of his work *Legislación Hipotecaria*, at pp. 299, 300 and 302: "*And if cancellations are involved and these are made, payment is required pursuant to schedule 5,* [No. 3 of our Schedule of Fees] . . . . . *If the cancellation is*

*made, nothing is charged,* as already stated, *for the entry of presentation,* . . . . . To sum up, as clearly revealed by the respective titles of the Schedule of Fees preceding numbers 5 and 6, *the former is especially applicable to all kinds of cancellations and the latter to special marginal notes that do not disclose cancellation.* Should any doubt remain, it is dispelled by No. 5 completely upon reciting that for every operation, to obtain a cancellation, *of whatever kind,* the fees indicated shall be charged . . . . . No. 6 [No. 4 of our Schedule of Fees] is applicable where the title is presented in order that a marginal note may be entered, *which note is not tantamount to a cancellation* of a record, *of a mention,* etc., for in that case No. 5 governs." (Italics ours.)

Galindo y Escosura express the same view in their *Comentarios a la Legislación Hipotecaria de España.* See Vol. 4, pp. 745 and 746 where it is said: *"Construction and application of No. 5*—As the R. O. of April 20, 1871, determined *the fees to be paid for cancellation in the form of notes,* and as the purpose of the government, *regarding cancellations,* was to bear in mind, not the material work of making the entry, but *the importance of the right involved in the cancellation,* it is apparent that in fixing the fees for this kind of work, it would have to ignore the manner in which the work was done, and to avoid doubts, the words *of whatever kind* were inserted . . . . . *Construction and application of schedule 6*—Whenever the Registrar is to make *a marginal note other than one of cancellation,* . . . . . he must apply schedule 6, . . . . . " (Italics ours.)

Since in the instant case the Registrar of Property is to make a marginal note by virtue of which *a mention is cancelled,* the applicable subdivision of § 22 is No. 3 and not No. 4. As the debts amount to $5,000 the Registrar was correct in demanding fees in the amount of $6.50, that is, $6 in accordance with paragraph (*g*) of subdivision (3) and

50¢ pursuant to paragraph (3) of § 31 of the Political Code,. as amended by the Act of March 14, 1907 (Sess. Laws,. pp. 330, 359).[4]

The note appealed from will be affirmed.

---

[4] Section 31 of the Political 'Code, as amended in the manner above indicated, essentially provides:

"That there shall be levied, collected and paid:

". . . . . .

"(3) On each registration or record of such instrument or document, or copy thereof, fifty cents."